FILED
2011 May-24  AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,** ) ) ) | |
| **Plaintiff,** ) ) | |
| **v.** ) ) | **CIVIL ACTION NO. CV** |
| **J.F. MORGAN GENERAL CONTRACTORS, INC., ANNISTON CONCRETE CO., INC. and MIRANDA McFRY as the Personal Representative of the Estate of RICKY LAVON SMITH, deceased.** ) ) ) ) ) ) | |
| **Defendants.** ) | |

---

## COMPLAINT FOR DECLARATORY JUDGMENT

---

Comes Now Pennsylvania National Mutual Casualty Insurance Company ("Penn National") and hereby files this action for declaratory relief pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C.A. § 2201, *et seq.* and 28 U.S.C.A. §§ 1332, 1333 and states as follows:

### PARTIES

1.    Penn National is a corporation incorporated under the laws of Pennsylvania, with its principal place of business in Pennsylvania.

2.    J.F. Morgan General Contractors, Inc. ("Morgan") is a corporation organized under the laws of Alabama with its principal place of business in Alabama.

3.    Anniston Concrete Company, Inc. ("Anniston Concrete") is an Alabama corporation with its principle place of business in Alabama.

4.      Miranda McFry is an individual, over the age of 19 and a resident of the Calhoun County, Alabama.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter under 28 U.S.C.A. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of costs and interest, and because there exists complete diversity of citizenship among the Plaintiff and the Defendants.  Venue of this suit is appropriate in the United States District Court for the Northern District of Alabama pursuant to 28 U.S.C.A. § 1391 because Penn National does business in the Northern District of Alabama, the underlying case of *Miranda McFry v. J.F. Morgan Contractors, Inc.,* Civil Action No. CV-2009-900346 (Circuit Court of Calhoun County, Alabama)(the "*McFry* Litigation"), is pending in the Circuit Court of Calhoun County, Alabama, the accident giving rise to the wrongful death action at issue in the *McFry* Litigation occurred in Calhoun County, Morgan's principle place of business is in Calhoun County and Anniston Concrete's principle place of business is in Calhoun County, Alabama, which is in the Northern District of Alabama.

## FACTUAL BACKGROUND

6.      This is a declaratory judgment action to determine whether Morgan, as an additional insured under the applicable Policy, adequately and timely notified Penn National of the accident and filing of the lawsuit in the *McFry* Litigation.

7.      Anniston Concrete was insured under a Penn National Commercial General Liability Policy (No. CL90625603)(the "Policy") for the period of September 1, 2007 through September 1, 2008.  The Policy contained the following terms and conditions:

**SECTION I – COVERAGES**
**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.      **Insuring Agreement**

       a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. ...

***

8.     The Policy included the following Exclusions:

2. **Exclusions**

This insurance does not apply to:

***

b. **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

***

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

  (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

  (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

3

9.     The Policy defined "insured contract" as follows:

**SECTION V – DEFINITIONS**

\*\*\*

8.     "Insured contract" means:

\*\*\*

    f.     That part of any other contractor agreement pertaining to your business ... under which you assume the tort liability of another to pay for "bodily injury" ... to a third person or organization.

10.     The Policy also contained an Automatic Additional Insured Endorsement that provided as follows:

**AUTOMATIC ADDITIONAL INSUREDS –**
**OWNERS, CONTRACTORS AND SUBCONTRACTORS**
**(ONGOING OPERATIONS)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.     The following provision is added to Section II –
WHO IS AN INSURED

    Any person(s) or organization(s) (referred to below as additional insured) with whom you are required in a written contract or agreement to name as an additional insured, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

        (1)     Your acts or omissions; or

        (2)     The actions or omissions of those acting on your behalf;

    In the performance of your ongoing operations for the additional insured(s) at the location or project described in the contract or agreement.

4

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

\*\*\*

D.      With respect to coverage provided by this endorsement, SECTION IV – COMMERCIAL GENERAL LIABILITY CONDICITONS, Paragraph 4. Other Insurance, Subparagraph a. Other Insurance, is replaced by the following:

**a.      Primary Insurance**
This insurance is primary except when b. below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then we will share with all other insurance by the method described in c. below, except:

(1)      If a written contract or agreement that requires any other person(s) or organization(s) to be an additional insured also requires this insurance to be primary and noncontributory, …

\*\*\*

**c.      Method of Sharing**
If all other insurance permits contribution by equal shares, we will follow this method also.

11.      The Policy required that the "insured" notify Penn National "as soon as practicable" regarding any potential claim and of a lawsuit:

**SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**

\*\*\*

**2.      Duties In The Event Of Occurrence, Offense, Claim Or Suit**

a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)  How, when and where the "occurrence" or offense took place;
(2)  The names and addresses of any injured persons and witnesses; and
(3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**   If a claim is made or "suit" is brought against any insured, you must:

  (1)  Immediately record the specifics of the claim or "suit" and the date received; and
  (2)  Notify us as soon as practicable.
  (3) You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**  You and any other involved insured must:

  (1)  Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
  (2)  Authorize us to obtain records and other information;
  (3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
  (4)  Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

12.    On March 19, 2008, Morgan entered into a Construction Contract with the Alabama Public School and College Authority for "Additions and Alterations to Jacksonville City Schools"(Jacksonville School Project").

13.    In April 2008, Morgan entered into a Subcontract agreement with Anniston Concrete wherein Anniston Concrete agreed to perform certain work on the Jacksonville School Project. The Subcontract did not include an indemnity provision or otherwise require Anniston Concrete to be assume the tort liability of Morgan.  "Schedule D 'Insurance'" to the Subcontract required Anniston Concrete to obtain liability insurance.  Schedule D also required the following:

> Subcontractor shall cause contractor to be named as an additional insured under the General Liability, Automobile Liability and Excess Liability Policies required. …

14.    On or about October 24, 2007, Morgan had been provided a Certificate of Insurance showing that Anniston Concrete had a liability policy with Penn National.  The Certificate of Insurance identified Morgan as a "Certificate Holder" and advised Morgan as follows:

6

**THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.**

\*\*\*

**IMPORTANT**

If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

\*\*\*

**DISCLAIMER**

The Certificate of Insurance on the reverse side of this form does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder, nor does it affirmatively or negatively amend, extend or alter coverage afforded by the policies listed thereon.

15.     On June 2, 2008, Ricky Lavon Smith was an employee of Anniston Concrete working at the Jacksonville School Project. Smith died as the result of an accident when the compactor he was operating overturned. On October 23, 2009, Smith's daughter, Miranda McFry, as personal representative of her father's estate, filed a wrongful death claim against Morgan (the "*McFry* Litigation").

16.     After Smith's death, Anniston Concrete's insurance agent reported the accident to the Alabama Self Insured Workers Compensation Fund after which Smith's relatives accepted the workers compensation death benefits. No report of Smith's death was made to Penn National.

17.     On December 22, 2010, more than two years after the accident and over a year after the filing of the complaint, Penn National received a letter dated December 15, 2010, from Morgan's

counsel requesting that Penn National provide Morgan with a defense and indemnity in the *McFry* Litigation.

18.    In March 2011, Penn National agreed to defend Morgan under a reservation of rights.

### THE AMOUNT IN CONTROVERSY EXCEEDS $75,000

19.    The amount in controversy in this declaratory judgment action exceeds the jurisdictional amount of $75,000. In a declaratory judgment action, the amount in controversy is determined as follows:

> In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. The plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. Where, as here, an insurer seeks a determination that it has no duty to defend a separate, underlying lawsuit, the court may take into account not only the recovery sought in the underlying suit, but also the pecuniary value of the [insurer's] obligation to defend the separate lawsuit.

*Owners Ins. Co. v. Bryant*, 2006 WL 50488 (M.D. Ga. 2006), citations omitted.

In this case, McFry has sued Morgan under Alabama's Wrongful Death Statute for the death of her father, Ricky Lavon Smith (Ex. A). Although McFry has not alleged a specific amount in damages, the Eleventh Circuit Court of Appeals has recognized that under Alabama's Wrongful Death Statute, the amount in controversy in such a case certainly exceeds the jurisdictional amount of $75,000. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058 (11th Cir. 2010). Moreover, the policy at issue in this declaratory judgment action has a limit of $1 million per occurrence which may be considered in determining the amount in controversy. See, *Coregis Ins. Co. v. McCollum*, 955 F.Supp. 120, 124 (M.D. Fla. 1997).

### COUNT ONE: DECLARATORY JUDGMENT

20.    Penn National re-alleges and incorporates paragraphs 1–19 as if set out fully herein.

21.    The Subcontract does not constitute an "insured contract" as defined by the Policy because it does not contain an indemnity provision nor otherwise require Anniston Concrete to assume the torts liability of Morgan.

22.    The Policy required that Morgan place Penn National on notice of Smith's accident in June 2008 and when Morgan was sued for Smith's death in November 2009.  Despite having a Certificate of Insurance disclosing Penn National as Anniston Concrete's liability insurer, Morgan made no effort to notify Penn National of Smith's death or the filing of the lawsuit against it until December 2010. As a result, Penn National has no duty to defend or indemnify Morgan in the *McFry* Litigation.

WHEREFORE, Penn National seeks a declaration from this Court as follows:

A.    That a bona fide justiciable controversy exists between the parties which should be resolved.

B.    The relevant provisions of the subject Penn National Policy and all applicable amendments and endorsements thereto, are clear and unambiguous.

C.    That the Subcontract Agreement between Anniston Concrete and Morgan does not constitute an "insured contract" as defined by the Policy.

D.    That Morgan failed to provide Penn National adequate and timely notice of Smith's accident and the filing of the lawsuit against it in the *McFry* Litigation.

E.    That as a result of the Morgan's failure to provide timely and adequate notice of a Smith accident and the filing of the *McFry* Litigation, there is no coverage afforded Morgan under the Policy for the claims made in the *McFry* Litigation.

9

*/s/ Steve R. Burford*

Steve R. Burford
Attorney for Plaintiff Pennsylvania National
Mutual Casualty Insurance Company
SIMPSON, McMAHAN,
GLICK & BURFORD, PLLC
The Mountain Brook Center
2700 Highway 280, Suite 203 W
Birmingham, Alabama 35223
Ph:      (205) 876-1600
Fax:    (205) 876-1616
Email: srburford@smgblawyers.com

PLEASE SERVE THIS COMPLAINT ON THE
DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:

J.F. Morgan General Contractors, Inc.
c/o Johnny Morgan, Jr.
1017 Avalon Lane
Anniston, AL  36207

Anniston Concrete Co., Inc.
P.O. Box 1088
Anniston, AL  35202

Miranda McFrye, as personal Representative of the
Estate of Ricky Lavon Smith
c/o Jeffrey Rickard, Esq.
Marsh, Rickard & Bryan
800 Shades Creek Parkway
Suite 600-D
Birmingham, AL  35209

10

ELECTRONICALLY FILED
10/23/2009 3:33 PM
CV-2009-900346.00
CIRCUIT COURT OF
CALHOUN COUNTY, ALABAMA
TED HOOKS, CLERK

# IN THE CIRCUIT COURT OF CALHOUN COUNTY, ALABAMA

## CIVIL ACTION NO. _____

**MIRANDA McFRY, as the Personal Representative of the Estate of RICKY LAVON SMITH, deceased**

            Plaintiff

**vs.**

**J. F. MORGAN GENERAL CONTRACTORS, INC.**
**No. 1**, whether singular or plural, the owner of the premises who had the duty to use reasonable care to have the premises in a reasonably safe condition;
**No. 2**, whether singular or plural, that person who was guilty of willful conduct on or before the occasion made the basis of this suit and whose willful conduct was a proximate cause of plaintiff's decedent's injuries and subsequent death;
**No. 3**, whether singular or plural, that person who was guilty of willful conduct on or before the occasion made the basis of this suit and whose willful conduct was a proximate cause of plaintiff's decedent's injuries and subsequent death;
**No. 4**, whether singular or plural, that person who was negligent on or before the occasion made the basis of this suit and whose negligence was a proximate cause of plaintiff's decedent's injuries and subsequent death;
**No. 5**, whether singular or plural, that entity which had conducted safety inspections or analysis with respect to the work being done by, operations of, and/or facilities of the general contractor, subcontractor and/or of the premises where plaintiff's decedent was injured at any time before the occurrence made the basis of plaintiff's complaint;
**No. 6**, whether singular or plural, that entity which had conducted safety inspections or analyses with respect to the work being done by, operations of, and or facilities of the plaintiff's decedent's employer at any time before the occurrence made the basis of plaintiff's complaint;
**No. 7**, whether singular or plural, that entity which was involved in the planning which related in any way to the safety of the plaintiff's decedent or the execution of work being done at the time of the occurrence made the basis of this lawsuit;

-1-



EXHIBIT

A

**No. 8**, whether singular or plural, that entity which conducted safety inspections or analyses at or with reference to the site of the occurrence made the basis of this lawsuit, prior to the date of said occurrence;

**No. 9**, whether singular or plural, that entity which designed the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 10**, whether singular or plural, that entity which manufactured or assembled the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 11**, whether singular or plural, that entity which distributed or sold the compactor which the plaintiff's decedent was operating at the time of his injury;

**No. 12**, whether singular or plural, that entity which inspected or approved the compactor which the plaintiff's decedent was operating at the time of his injury;

**No. 13**, whether singular or plural, that entity which developed or prepared instructions, labels and/or warnings for the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 14**, whether singular or plural, that entity which tested the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 15**, whether singular or plural, that entity which serviced or maintained the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 16**, whether singular or plural, that entity which performed repair work on the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 17**, whether singular or plural, that entity which modified or altered the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 18**, whether singular or plural, that entity which recommended the use of the compactor which plaintiff's decedent was operating at the time of his injury;

**No. 19**, whether singular or plural, that person, general contractor, subcontractor and/or other contractor involved in the work done by plaintiff's decedent at the time of the occurrence made the basis of this lawsuit;

**No. 20**, whether singular or plural, that entity which had a contract with plaintiff's decedent's at the time of the incident made the basis of this lawsuit;

**No. 21**, whether singular or plural, that entity which was a party to a contract to which plaintiff's decedent was a third-party beneficiary;

**No. 22**, whether singular or plural, any and all insurance carriers which made any visit to or loss control inspection of the work site where plaintiff's decedent was injured or any other place of business of plaintiff's decedent's employer prior to the occurrence made the basis of plaintiff's complaint;

-2-

**No. 23**, whether singular or plural, that entity, including but not limited to the workmen's compensation and comprehensive general liability insurance carrier of plaintiff's decedent's employer, which conducted safety inspections of plaintiff's decedent's employer, which conducted safety inspections of or with respect to plaintiff's decedent's work environment including, but not limited to the equipment, systems or methods utilized by plaintiff's decedent and/or plaintiff's decedent's employer on the occasion made the basis of this lawsuit;

**No. 24**, whether singular or plural, that entity, including, but not limited to, the general liability insurance carrier of the general contractor, subcontractor and/or owner entity which owned, occupied or maintained the premises involved in the occurrence made the basis of this lawsuit which conducted any safety inspections or analyses of, or with regard to the premises involved in the occurrence made the basis of this lawsuit at any time prior to said occurrence;

**No. 25**, whether singular or plural, that entity, including, but not limited to, the general liability insurance carrier of the general contractor, subcontractor and/or owner entity which owned, occupied or maintained the premises involved in the occurrence made the basis of this lawsuit with respect to plaintiff's decedent's work environment including, but not limited to the equipment, systems or methods utilized by plaintiff's decedent, plaintiff's decedent's employer, the general contractor, subcontractor and/or owner of the premises where plaintiff's decedent was injured on the occasion made the basis of this lawsuit;

**No. 26**, whether singular or plural, that entity which had a contract with plaintiff's decedent's employer at the time of the incident made the basis of this lawsuit;

**No. 27**, whether singular or plural, that entity which controlled or had the right to control the work being done at the time of the occurrence made the basis of this lawsuit;

**No. 28**, whether singular or plural, that entity which did or failed to do any act that resulted in the plaintiff's decedent's injuries and subsequent death;

**No. 29**, whether singular or plural, that entity which was the owner or owners of the premises where plaintiff's decedent was working at the time of the occurrence made the basis of this lawsuit;

**No. 30**, whether singular or plural, that entity which owned, maintained or had any interest in the premises involved in the occurrence made the basis of this lawsuit;

**No. 31**, whether singular or plural, that entity which was the lessor of the premises involved in the occurrence made the basis of this lawsuit;

**No. 32**, whether singular or plural, that entity which was the lessee of the premises involved in the occurrence made the basis of this lawsuit;

**No. 33**, whether singular or plural, that entity which controlled and/or had the right to control the premises involved in the occurrence made the basis of this lawsuit at the time of or at any time before said occurrence;

**No. 34**, whether singular or plural, that entity which controlled or had the right to control the access or egress to the premises involved in the occurrence made the basis of this lawsuit at the time of said occurrence;

**No. 35**, whether singular or plural, that entity which was the architect, engineer, contractor or subcontractor involved in the planning, design or construction of the high school;

**No. 36**, whether singular or plural, that entity, other than those entities described above whose negligence, willfulness, wantonness, recklessness or other wrongful conduct contributed to cause the occurrence made the basis of this lawsuit;

**No. 37**, whether singular or plural, that entity, other than those entities described above, which was the predecessor corporation of any of the entities described above;

**No. 38**, whether singular or plural, that entity which reinsured or provided excess coverage with relation to any self-insurance program provided by plaintiff's decedent's employer;

**No. 39**, whether singular or plural, that entity which provided any insurance coverage, of whatever kind or character, including excess and/or umbrella type of coverage, for any of the named defendant or fictitious party defendants listed or named herein;

**No. 40**,  whether singular or plural, that entity, other than those entities described above, which is the successor in interest of any of those entities described above.

Plaintiff avers that the identities of the Fictitious Party Defendants herein are otherwise unknown to Plaintiff at this time or, if their names are known to Plaintiff their identities as proper party Defendants are not known to Plaintiffs at this time, and their true names will be substituted by amendment when ascertained.

Defendants.

-4-

# C O M P L A I N T

## PARTIES

1.      Plaintiff, Miranda McFry, is the Personal Representative of the Estate of her father, Ricky Lavon Smith, deceased.  The plaintiff  is an individual over the age of 19 and a resident of Calhoun County, Alabama.

2.      Defendant, J. F. Morgan General Contractors, is a business organized in the State of Alabama, and doing business in Alabama.  J. F. Morgan General Contractors was the general contractor over the construction of various additions and alterations to Jacksonville High School.

3.      Plaintiff further alleges that Fictitious Party Defendants 1 through 40, whether singular or plural, are those persons, firms, corporation, or other entities whose wrongful conduct caused or contributed to cause the plaintiff's decedent's injuries and subsequent death.

## STATEMENT OF FACTS

4.      On or about June 2, 2008, plaintiff's decedent, Ricky Lavon Smith, was employed as a skilled laborer for Anniston Concrete and Asphalt Company.  Plaintiff's decedent was working on a job site located at 1000 George Douthit Drive SW, Jacksonville, Alabama (Jacksonville High School) when a compactor he was operating overturned, pinning him underneath it.

5.      Defendant, J. F. Morgan General Contractors, was the general contractor for the construction of various additions and alterations at the

high school prior to and at the time of plaintiff's decedent's injury and death.

Defendant, J. F. Morgan General Contractors, entered into a construction

contract with the Alabama Public School and College Authority and The

Jacksonville City Board of Education on or about March 19, 2008.

Defendant, pursuant to said contract, obligated itself, among other things,

to:

### ARTICLE 14
### SAFETY and PROTECTION of PERSONS and PROPERTY

A.   The Contractor shall be solely and completely responsible for conditions at the Project site, including safety of all persons (including employees) and property.  The Contractor shall create, maintain, and supervise conditions and programs to facilitate and promote safe execution of the Work, and shall supervise the Work with the attention and skill required to assure its safe performance.  Safety provisions shall conform to OSHA requirements and all other federal, state, county and local laws, ordinances, codes, and regulations...

B.   The Contractor shall employ Construction Methods, safety precautions, and protective measures that will reasonably prevent damage, injury or loss to:

   (1)   workers and other persons on the Project site and in adjacent and other areas that may be affected by the Contractor's operations;

   • • •

G.   The Contractor shall furnish a qualified safety representative at the Project site whose duties shall include the prevention of accidents...

-6-

6.     From a procedural aspect, this suit is brought pursuant to Section 25-5-11 of the Code of Alabama.

## COUNT ONE
### Negligence and Wantonness

7.     Plaintiff re-alleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges:

8.     On or about June 2, 2008, defendant, J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40, was the general contractor and/or supervisor of the job site located at 1000 George Douthit Drive SW, Jacksonville, Alabama, the site of the occurrence made the basis of plaintiff's complaint.  As such general contractor and/or supervisor, the defendant had the duty and/or right to supervise and control the job site at which said work was carried out.

9.     Defendant, J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40, had a duty imposed by contract and/or common law and/or via a voluntarily undertaking to keep the premises safe and provide plaintiff's decedent with safety training, supervision, instruction and with proper safety equipment.

10.    Defendant, J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40, negligently and/or wantonly breached its duties and obligations resulting in the death of plaintiff's decedent.

11.    At the aforesaid time and place, defendant, J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40, was the general contractor and/or supervisor of the job site on which the plaintiff's decedent was working and was injured.  As such general contractor and/or supervisor, defendant was required by law to abide by the rules and regulations of the Occupational Safety and Health Act (OSHA) regarding worker's safety. Defendant negligently, wantonly and/or wilfully breached its duty in this regard by failing to abide by the rules and regulations clearly set out by the Occupational Safety and Health Act (OSHA).  Said conduct was a proximate cause of the Plaintiff's decedent's injuries and subsequent death.

12.    The negligent and/or wanton conduct of defendant, J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40, combined and concurred with the conduct of other fictitious party defendants to proximately cause plaintiff's decedent's injuries and subsequent death.

WHEREFORE, the plaintiff demands a monetary judgment against Defendant, J. F. Morgan General Contractors, and Fictitious Party Defendants 1-8 and 18-40, in an amount which will fairly reflect the amount of wrongdoing on the part of the defendants and prevent similar wrongs. Further, the plaintiff requests that the Court enter judgment consistent with the verdict, and that it also award them interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

-8-

## COUNT TWO
## Breach of Contract

13.    Plaintiff re-alleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges:

14.    At the aforesaid time and place, plaintiff's decedent was a third party beneficiary of an express and/or implied contract between the Alabama Public School and College Authority and The Jacksonville City Board of Education and J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40, pursuant to which J. F. Morgan General Contractors obligated itself, among other things, to:

## ARTICLE 14
## SAFETY and PROTECTION of PERSONS and PROPERTY

A.    The Contractor shall be solely and completely responsible for conditions at the Project site, including safety of all persons (including employees) and property.  The Contractor shall create, maintain, and supervise conditions and programs to facilitate and promote safe execution of the Work, and shall supervise the Work with the attention and skill required to assure its safe performance.  Safety provisions shall conform to OSHA requirements and all other federal, state, county and local laws, ordinances, codes, and regulations...

B.    The Contractor shall employ Construction Methods, safety precautions, and protective measures that will reasonably prevent damage, injury or loss to:

(1)    workers and other persons on the Project site and in adjacent and other areas that may be affected by the Contractor's operations;

. . .

-9-

     G.     The Contractor shall furnish a qualified safety representative at the Project site whose duties shall include the prevention of accidents...

15.     At the aforesaid time and place, the defendant negligently, wantonly and/or wilfully breached its contractual duties regarding job site safety.  This failure created a serious safety hazard, violated good safe work practices, and placed the construction work ahead of plaintiff's decedent's safety.  Said breach of contract was a proximate cause of the plaintiff's decedent's injuries and subsequent death.

16.     Plaintiff alleges that plaintiff's decedent's injuries and subsequent death was a proximate consequence of the breach of contract or other wrongful conduct of the defendant, J. F. Morgan General Contractors, and fictitious party defendants 1-8 and 18-40.

WHEREFORE, the plaintiff demands a monetary judgment against Defendant, J. F. Morgan General Contractors, and Fictitious Party Defendants 1-8 and 18-40, in an amount which will fairly reflect the amount of wrongdoing on the part of the defendants and prevent similar wrongs. Further, the plaintiff requests that the Court enter judgment consistent with the verdict, and that it also award them interest from the date of judgment and the costs incurred by the court in managing this lawsuit.

## COUNT THREE
## Counts against Fictitious Parties

17.    Plaintiff re-alleges, as if fully set forth, each and every allegation contained in the preceding paragraphs, and further alleges:

18.    Fictitious defendant no. 9 negligently designed the compactor which plaintiff's decedent was operating.

19.    Fictitious defendant no. 10 negligently manufactured the compactor which plaintiff's decedent was operating.

20.    Fictitious defendant no. 11 negligently distributed or sold the compactor which plaintiff's decedent was operating.

21.    Fictitious defendant no. 12 negligently inspected or approved the compactor which plaintiff's decedent was operating.

22.    Fictitious defendant no. 13 negligently developed or prepared instructions, labels and/or warnings for the compactor which plaintiff's decedent was operating.

23.    Fictitious defendant no. 14 negligently tested the compactor which plaintiff's decedent was operating.

24.    Fictitious defendant no. 15 negligently serviced or maintained the compactor which plaintiff's decedent was operating.

25.    Fictitious defendant no. 16 negligently performed repair work on the compactor which plaintiff's decedent was operating.

26.    Fictitious defendant no. 17 negligently modified and/or altered the compactor which plaintiff's decedent was operating.

WHEREFORE, the plaintiff demands a monetary judgment against Fictitious Party Defendants 9-17, in an amount which will fairly reflect the amount of wrongdoing on the part of the defendants and prevent similar wrongs. Further, the plaintiff requests that the Court enter judgment consistent with the verdict, and that it also award them interest from the date of judgment and the costs incurred by the court in managing this lawsuit

s/Jeffrey C. Rickard

**JEFFREY C. RICKARD** (RIC025)

s/Roger Lucas

**ROGER LUCAS** (LUC005)
Attorneys for Plaintiff

**OF COUNSEL:**

**MARSH, RICKARD & BRYAN, P.C.**
800 Shades Creek Parkway
Suite 600D
Birmingham, Alabama 35209
Tel:   (205) 879-1981
Fax:   (205) 879-1986

-12-

## JURY DEMAND

Plaintiff hereby demands a struck jury for the trial in this cause.

s/Jeffrey C. Rickard
**JEFFREY C. RICKARD** (RIC025)
Attorney for Plaintiff

## PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:

J. F. Morgan General Contractor, Inc.
c/o Johnny Morgan, Jr.
1017 Avalon Lane
Anniston, Alabama 36207

-13-