**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION**

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL MUTUAL CASUALTY INSURANCE COMPANY,** | ] ] ] ] | |
| **Plaintiff,** | ] | |
| | ] | **CASE NO.: 1:11-cv-1671-KOB** |
| **v.** | ] | |
| | ] | |
| **J.F. MORGAN GENERAL CONTRACTORS, INC.,** *et al.*, | ] ] ] | |
| **Defendants.** | ] | |

**MEMORANDUM OPINION**

This matter is before the court on Plaintiff Pennsylvania National Mutual Casualty Insurance Company's "Renewed Motion for Summary Judgment," (Doc. 56); Defendant Nationwide Mutual Insurance Company's "Motion for Summary Judgment on the Claims of Pennsylvania National Mutual Casualty Insurance Company and Motion for Summary Judgment on its Counterclaim," (Doc. 58); and Penn National's "Motion for Leave to Amend Complaint," (Doc. 89).

This declaratory judgment case arises from a dispute over insurance coverage for the underlying case of *Miranda McFry v. J.F. Morgan Contractors, Inc.*, Civil Action No. CV-2009-900346, in the Circuit Court of Calhoun County, Alabama. To resolve that case against their purported insured, J.F. Morgan General Contractors, Penn National and Nationwide agreed to *each* pay half of a settlement and ask this court to resolve ultimate responsibility in this case. So here we are.

1

The parties dispute which insurance company should ultimately be responsible for the full settlement amount. Penn National argues that it is not responsible for the settlement because nobody reported McFry's lawsuit to it for over a year after the lawsuit was filed and argues that Nationwide should pay Penn National back its portion of the settlement.

Penn National wins this dispute because nobody sent it the suit papers from McFry's lawsuit until 13 months after McFry filed suit. Thus, the court **GRANTS** Penn National's motion for summary judgment; **DENIES** Nationwide's motion for summary judgment; and **DENIES AS MOOT** Penn National's motion to amend the complaint.

### I.      Facts

On September 1, 2007, Anniston Concrete Company entered into a commercial general liability policy, numbered CL90625603, with Penn National. Anniston Concrete purchased its Penn National policy through Jim Garmon's insurance agency, Insurance Planning Services ("IPS"). IPS sold Penn National policies under an "agency-company agreement," which outlined the relationship between IPS and Penn National. (Doc. 57, ¶ 1; Doc. 59, ¶¶ 4, 8, 10; Doc. 60-2; Doc. 60-5).

On March 28, 2008, Jacksonville City Schools awarded J.F. Morgan a contract to remodel Jacksonville High School and other schools. On April 8, 2008, J.F. Morgan, in turn, sub-contracted with Anniston Concrete to perform site and grading work at Jacksonville High School. The sub-contract required Anniston Concrete to have a commercial general liability policy and to name J.F. Morgan as an "additional insured" under the policy. (Doc. 57, ¶¶ 7-9; Doc. 59, ¶¶ 1-3; Doc. 60-1).

Upon entering into the sub-contract, J.F. Morgan became an "additional insured" to

Anniston Concrete's Penn National policy by operation of the policy's "Automatic Additional Insureds – Owners, Contractors and Subcontractors (Ongoing Operations)" endorsement. IPS provided J.F. Morgan with certificates of insurance that showed Anniston Concrete's insurance coverage. The certificates of insurance listed J.F. Morgan as a "certificate holder" and stated: "IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed." (Doc. 21-4, 2-7; Doc. 57, ¶ 11; Doc. 59, ¶ 7).

Harleysville Mutual Insurance Company (Nationwide's predecessor) also directly insured J.F. Morgan through a commercial general liability policy, numbered MPA1M1453. J.F. Morgan employed someone to manage all its insurance contracts. (Doc. 57, ¶ 13; Doc. 59, ¶ 14; Doc. 60-6).

On June 2, 2008, Ricky Smith, an employee of Anniston Concrete, died while performing soil compaction work at Jacksonville High School. The sub-contract between J.F. Morgan and Anniston Concrete covered Smith's work at the time of his death.[1] (Doc. 57, ¶¶ 23-4; Doc. 59, ¶ 17).

J.F. Morgan immediately learned about the accident, which occurred on its job site, and informed Harleysville. Additionally, J.F. Morgan told Anniston Concrete that it needed to notify its insurance carrier of the accident. J.F. Morgan did not contact Penn National. (Doc. 57, ¶¶ 25-7; Doc. 93-3, 8).

One day after the accident, on June 3, 2008, Anniston Concrete informed IPS about

---

[1]Penn National seeks, very late in the case, to dispute that the sub-contract covered Smith's work. However, Penn National has stipulated to and admitted this fact numerous times, including in a pretrial order entered by the court on November 19, 2012. (Doc. 46, 2-3). The court deems this fact admitted by Penn National for purposes of summary judgment.

Smith's accident. IPS notified Anniston Concrete's workers compensation insurance carrier of the accident, but not Penn National. Anniston Concrete did not directly inform Penn National about Smith's accident either. (Doc. 57, ¶¶ 28-9; Doc. 59, ¶ 18).

About 15 months after the accident, on October 29, 2009, Miranda McFry, Smith's daughter, filed a lawsuit against J.F. Morgan. Around November 9, 2009, McFry served J.F. Morgan with a summons and a copy of the complaint. J.F. Morgan, in turn, notified Harleysville of McFry's lawsuit on the same day, but did not notify Penn National. J.F. Morgan also told Anniston Concrete about McFry's lawsuit. (Doc. 57, ¶¶ 31-2, 34; Doc. 59, ¶ 19; Doc. 93-3, 10; Doc. 93-3, 9).

On November 12, 2009, Anniston Concrete informed IPS about McFry's lawsuit. Anniston Concrete had a copy of the complaint, but did not give the complaint to IPS and IPS did not ask for the complaint. IPS reviewed copies of the certificates of insurance it provided to J.F. Morgan and incorrectly determined that Anniston Concrete's Penn National policy did not include J.F. Morgan as an additional insured. Neither IPS nor Anniston Concrete communicated this incorrect information to J.F. Morgan, however. Further, neither IPS nor Anniston Concrete contacted Penn National about McFry's lawsuit or forwarded the complaint to Penn National. (Doc. 57, ¶¶ 37, 39; Doc. 59, ¶ 20; Doc. 91-3, 36; Doc. 93-3, 6).

On December 15, 2010, J.F. Morgan asked IPS, by letter, to provide a defense and indemnity for McFry's lawsuit. IPS forwarded the letter to Penn National on December 20, 2010, 13 months after McFry filed her lawsuit and two-and-a-half years after Smith's accident. (Doc. 57, ¶ 46; Doc. 93-3, 9).

On May 20, 2011, Penn National filed a complaint asking this court to determine which

insurance company, Penn National or Nationwide, had to defend and ultimately pay for the defense and settlement of McFry's lawsuit. (Doc. 1). McFry's lawsuit settled on August 6, 2012 and Penn National and Nationwide each paid one half of the settlement under a reservation of rights. (Doc. 59, ¶ 23). Penn National subsequently amended its complaint on August 23, 2012 to reflect settlement of McFry's underlying lawsuit. (Doc. 36).

No genuine issues of material fact exist. The only issue for the court is which insurance company has to pay for the settlement of McFry's lawsuit.

## II.    Standard of Review

Summary judgment is an integral part of the Federal Rules of Civil Procedure. Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56. When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law. *Id*.

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56).

After both parties have addressed the motion for summary judgment, the court must grant the motion if no genuine issues of material fact exist *and if* the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56.

5

The applicable Rule 56 standard is not affected by the filing of cross motions for summary judgment. *See, e.g. United States v. Oakley*, 744 F.2d 1553, 1555-56 (11th Cir. 1984). When parties file cross motions for summary judgment, "each side must still establish the lack of genuine issues of material fact and that it is entitled to judgment as a matter of law." *Busby v. JRHBW Realty, Inc.*, 642 F. Supp. 2d 1283, 1288 (N.D. Ala. 2009). However, "cross-motions may be probative of the non-existence of a factual dispute when . . . they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Oakley*, 744 F.2d at 1555-56.

### III.  Analysis

Penn National argues that it is not required to pay for the settlement of McFry's lawsuit because J.F. Morgan failed to timely notify Penn National of Smith's accident or McFry's lawsuit and failed to timely forward suit papers from McFry's lawsuit as required by the Penn National policy.

### A.  Preliminary Matters

Before examining Penn National's lack of notice defense, the court must determine whether the Penn National policy even applies to J.F. Morgan. Nationwide bears the burden of establishing that J.F. Morgan, its insured, is covered by the Penn National policy by demonstrating the claims made against J.F. Morgan fall within the policy coverage. *See Colonial Life & Acc. Ins. Co. v. Collins*, 194 So. 2d 1164, 1168 (Ala. 1967).

Here, the Penn National policy states:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those

damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result

(Doc. 60-2, 103).

No party disputes that Smith suffered "bodily injury" while working for Anniston Concrete on J.F. Morgan's job site or that McFry sued over the same "bodily injury."[2] No party disputes that the Penn National policy applies to the type of accident that Smith suffered. Further, all parties agree that the Penn National policy included J.F. Morgan as an additional insured. (Doc. 70, 11-2; Doc. 60-3, 11-2). Thus, the Penn National policy would provide insurance coverage to J.F. Morgan absent a policy or contractual defense.

Failure to comply with the Penn National policy's notice provisions is a defense to coverage. To determine whether J.F. Morgan failed to notify Penn National, the court must determine who at Penn National J.F. Morgan could have notified, what J.F. Morgan had to tell Penn National, and whether J.F. Morgan's delay in notifying Penn National was reasonable.

### B.    Notice to Whom

The court first must determine who J.F. Morgan could potentially have notified. Nationwide admits that J.F. Morgan did not directly communicate with Penn National. Instead, Nationwide argues that Anniston Concrete notified Penn National of Smith's accident and McFry's lawsuit for J.F. Morgan when Anniston Concrete told IPS about the two events. Nationwide agues that IPS is an agent for Penn National. The court agrees that IPS is Penn National's agent who could receive notice of Smith's accident and McFry's lawsuit and could

---

[2] "'Bodily Injury' means bodily injury . . . sustained by a person, including death." (Doc. 60-2, 114).

receive suit papers from McFry's lawsuit.

Because Nationwide asserts that an agency relationship exists between Penn National and IPS, Nationwide must prove the relationship. *See N. River Ins. Co. v. Overton*, 59 So. 3d 1, 8 (Ala. 2010) (citing *Lincoln Log Home Enters., Inc. v. Autrey*, 836 So. 2d 804, 806 (Ala. 2002).

Alabama law recognizes several types of agents including general agents, limited agents, and independent agents. *See Washington Nat. Ins. Co. v. Strickland*, 491 So. 2d 872, 874-5 (Ala. 1985). A limited agent can be empowered to receive notice. *See Alabama Plating Co. v. U.S. Fid. & Guar. Co.*, 690 So. 2d 331 (Ala. 1996) (finding HRH an agent of insurer "for the receipt of notice relating to the potential environmental liability"). Here, while IPS may not be a general agent of Penn National, IPS is clearly a limited agent for the purpose of receiving notice.

IPS is Penn National's limited agent because of the agency-company agreement between the parties. (Doc. 60-5, 2-12). The parties' agreement is relevant to determining an agent's authority. *See Overton*, 59 So. 3d at 2-3, 9, 12. IPS and Penn National's agency-company agreement is "the entire agreement of the parties" and Penn National admits that "[a]ll authority IPS had to act on behalf of Penn National was governed by the terms of the [agency-company agreement]." (Doc. 29, 8; Doc. 60-5, 11).

In the agreement, Penn National grants IPS authority to act for Penn National regarding notice. The agency-company agreement states:

> The Agent agrees to report promptly, all losses or claims. The Agent has no authority to admit or deny liability on the part of the Company for any loss or claim nor to represent the Company in any other manner than as specifically set forth in the Agents Draft Authority Instructions. No remuneration shall be paid to the Agent for his assistance and cooperation in the handling of claims, unless the Company agrees thereto in writing.

(Doc. 60-5, 5).

In *Sec. Title Guarantee Corp. of Baltimore v. GMFS, LLC*, the Court of Civil Appeals of Alabama found Southern Alabama Professional Title Services, Inc. ("SAPTS") a limited agent of Security Title Guarantee Corporation of Baltimore. *See* 910 So. 2d 787, 792 (Ala. Civ. App. 2005). The court focused on the "express authority to receive notice of claims" in the agency agreement and found a provision very similar to the IPS - Penn National provision authorized SAPTS to receive notice for Security Title. *Id.* at 793. The SAPTS - Security Title agreement stated:

> In the event of any claim made to Agent [SAPTS] under any commitment or policy issued by Agent on behalf of Security [Title] or if Agent becomes aware of any circumstances which may give rise to such a claim, Agent shall immediately notify Security [Title] in writing. Agent shall not adjust, compromise or settle any such claim, unless specifically authorized by Security [Title] in writing. Agent further agrees to cooperate with and assist Security [Title] in the prompt resolution of any such claim.

*Id.*

Penn National conflates notification with the entire claims review process and argues that IPS is only responsible for the initial "reporting" part of the process. Reporting and notifying are two different words for the same initial step in the claims review process. IPS's authority to "report promptly" clearly includes the authority to *receive* notice of the claims it must report. Thus, IPS is Penn National's limited agent with the authority to receive notice.

IPS's status as a statutory "producer" or independent agent is irrelevant.[3] Penn National argues that IPS cannot receive notice because the agency-company agreement states that "[n]othing is this agreement shall be construed to create the relationship of employer and

---

[3] "Producer" is the statutory term for insurance brokers. Ala. Code § 27-7-1 (1975).

employee." Penn National argues that IPS is instead a producer, or independent agent answerable to Anniston Concrete, rather than Penn National. A "producer" is "[a] person required to be licensed under the laws of [Alabama] to sell, solicit, or negotiate insurance." Ala. Code § 27-7-1. Although a producer is normally the insured's agent, it may concurrently be the insurer's agent. *See Strickland*, 491 So. 2d at 875.

IPS acts for Penn National in many more ways than a mere producer or independent agent. IPS, among other things, "[provides] all usual and customary services of an insurance agent on all insurance contracts placed by [IPS] with [Penn National]; . . . agrees to keep complete records and accounts of all transactions; . . . agrees to investigate carefully the insurability of all applications; . . . [and] agrees to report promptly, all losses or claims." (Doc. 60-5). However, even if IPS is a producer, IPS is still Penn National's agent for purposes of receiving notice because the agency-company agreement says so.

In summary, IPS is Penn National's agent able to receive notice of Smith's accident and McFry's lawsuit. Notice to IPS is imputed to Penn National. "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought in good faith and the exercise of ordinary care and diligence to communicate to the other." Ala. Code § 8-2-8 (1975); *see GMFS, LLC*, 910 So. 2d at 793 (Agent's knowledge "is imputed to [insurer] by § 8-2-8 regardless of whether [agent] was a general agent.").

**B.    Notice of What**

The court must next determine what must be communicated to Penn National (directly or through its agent IPS) under the Penn National policy. Nationwide argues that Penn National received notice when Anniston Concrete told IPS about Smith's accident and McFry's lawsuit

10

and that the policy did not require J.F. Morgan to also notify Penn National. The court agrees that the policy did not require J.F. Morgan to notify Penn National of Smith's accident or McFry's lawsuit because Anniston Concrete did so. However, the Penn National policy did require J.F. Morgan to "immediately" forward suit papers from McFry's lawsuit to Penn National. J.F. Morgan failed to do so.

**1.    Policy Language**

The notice obligations in the Penn National policy state:

**Duties In The Event of Occurrence, Offense, Claim Or Suit**

a.    **You** must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.    If a claim is made or "suit" is brought against any insured, **you** must:
(1) Immediately record the specifics of the claim or "suit" and the date received; and
(2) Notify us as soon as practicable.
You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c.    **You and any other involved insured** must:
**(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";**
(2) Authorize us to obtain records and other information;
(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

(Doc. 60-2, 112-3 (emphasis added)).

Alabama law controls interpretation of the policy's notice provisions because Penn

National issued the policy in Alabama. *See Ailey v. Nationwide Mut. Ins. Co.*, 570 So. 2d 598, 599 (Ala. 1990). "[U]nambiguous policies are to be enforced as written." *Brown Mach. Works & Supply Co. v. Ins. Co. of N. Am.*, 659 So. 2d 51, 59 (Ala. 1995).

When an insured fails to timely notify its insurer about an accident or a lawsuit or fails to forward suit papers as required by the policy, the insurer may deny coverage. *See Watts v. Preferred Risk Mut. Ins. Co.*, 423 So. 2d 171, 173 (Ala. 1982); *Progressive Specialty Ins. Co. v. Steele ex rel. Steele*, 985 So. 2d 932, 943 (Ala. Civ. App. 2007); *Webb v. Zurich Ins. Co.*, 200 F.3d 759, 761 (11th Cir. 2000). The insurer need not show prejudice. *See Am. Fire & Cas. Co. v. Tankersley*, 116 So. 2d 579, 582 (Ala. 1959); *Am. Liberty Ins. Co. v. Soules*, 258 So. 2d 872, 878 (Ala. 1972); *S. Guar. Ins. Co. v. Thomas*, 334 So. 2d 879, 882 (Ala. 1976).

Penn National and Nationwide disagree about what must be communicated to Penn National.

### 2. Notice of Smith's Accident and McFry's Lawsuit

The Penn National policy did not require J.F. Morgan to notify Penn National of Smith's accident or McFry's lawsuit. Rather, under the unambiguous language of the policy, notice of Smith's accident and McFry's lawsuit need only come from Anniston Concrete, and it did.

Under the policy, "**You** must see you it that we are notified as soon as practicable of an 'occurrence.'"[4] (Doc. 60-2, 112 (emphasis added)). "If a claim is made or 'suit' is brought against any insured, **you** must . . . [n]otify us as soon as practicable." (Doc. 60-2, 112 (emphasis added)). "You" means the "Named Insured shown in the Declarations." (Doc. 60-2, 103). The only named insured in the declarations is Anniston Concrete. (Doc. 60-2, 2).

_____

[4] "'Occurrence' means an accident." (Doc. 60-2, 116).

Thus, the Penn National policy only requires *Anniston Concrete* to notify Penn National of Smith's accident and McFry's lawsuit. Anniston Concrete notified Penn National of Smith's accident through IPS on June 3, 2008. Anniston Concrete also notified Penn National of McFry's lawsuit through IPS on November 12, 2009.

Penn National argues that J.F. Morgan, an additional insured, is bound by the same notice requirements as the named insured and, thus, J.F. Morgan also had to notify Penn National. In *Burkes Mech., Inc. v. Ft. James-Pennington, Inc.*, the Alabama Supreme Court interpreted a notice provision somewhat similar to the Penn National policy's provision; it held that "the policy cast the burden of compliance with notice provisions *equally* upon [the additional insured] and the [named insured]." 908 So. 2d 905, 913 (Ala. 2004). However, the *Burkes* provision required *both* the named insured and additional insured to take action. Here, the Penn National policy's unambiguous language reveals that *only* Anniston Concrete had to notify Penn National of Smith's accident and McFry's lawsuit.

Penn National "cannot avoid liability under the subject policy simply because [J.F. Morgan] did not comply with the [notice] provisions . . . in view of compliance with those provisions by [Anniston Concrete]." *Royal Indem. Co. v. Pearson*, 246 So. 2d 652, 662 (Ala. 1971). J.F. Morgan told Anniston Concrete to contact Penn National about Smith's accident and McFry's lawsuit. Anniston Concrete did so, satisfying the Penn National policy's notice requirements for Smith's accident and McFry's lawsuit.

### 3.    Forwarding of Suit Papers

However, the Penn National policy required J.F. Morgan as "any other involved insured" to send the suit papers from McFry's lawsuit to Penn National. J.F. Morgan failed to send the suit

13

papers.

Under the Penn National policy, "You [Anniston Concrete] and **any other involved insured** [J.F. Morgan] must . . . [i]mmediately send us copies of any demands, notices, summonses, or legal papers received in connection with the claim or 'suit.'" (Doc. 60-2, 112 (emphasis added)). "Insured" means "[a]ny person(s) or organization(s) (referred to below as additional insured) with whom you [Anniston Concrete] are required in a written contract or agreement to name as an additional insured." (Doc. 60-2, 87). J.F. Morgan's sub-contract with Anniston Concrete required J.F. Morgan "to be named as an additional insured" and the Penn National policy included J.F. Morgan as an additional insured by operation of the policy's "Automatic Additional Insureds – Owners, Contractors and Subcontractors (Ongoing Operations)" endorsement. (Doc. 60-1, 9).

 "[A]n additional insured with knowledge of insurance coverage does indeed have a duty to notify the insurer of a potentially covered event in accordance with the terms of the notice clause in the named insured's policy." *Steele*, 985 So. 2d at 943 (Moore, J., concurring); *see Watts*, 423 So. 2d at 173; *Webb*, 200 F.3d at 761. Under the unambiguous language of the Penn National policy, J.F. Morgan had to "immediately" send suit papers to Penn National. J.F. Morgan's failure to comply with the Penn National policy's terms abrogates J.F. Morgan's coverage.

Nationwide offers three excuses why J.F. Morgan failed to forward the suit papers for 13 months. Implicit in all of Nationwide's arguments is the theory that additional insureds and named insureds are treated differently for purposes of notice under Alabama law. However, "the general rule in accordance with the majority of jurisdictions [states that] a duty to provide notice

14

under an automobile liability policy exists as to an additional insured." *Steele*, 985 So. 2d at 943 (Moore, J., concurring) (internal punctuation omitted). Nationwide's arguments are discussed below in turn.

First, Nationwide argues that J.F. Morgan did not know that the Penn National policy existed or about the policy's notice requirements and, thus, is relieved from the requirement to send the suit papers.

Nationwide relies on *Am. Liberty Ins. Co. v. Soules*, 258 So. 2d 872, 872 (Ala. 1972). In *Soules*, Dennis Heth accidentally shot Eldora Soules while sitting in his vehicle outside of an apartment building. *Id.* at 873. Soules sued Heth and, about a year after the accident, Heth sought coverage under his parent's homeowner's insurance for the lawsuit's defense. *Id.* at 873-4. Heth, an additional insured, did not know that his parent's policy existed and Heth's parents, the named insureds, did not realize the policy covered the accident until a year after the accident. *Id.* at 874. The Alabama Supreme Court found that a named insured is required to notify the insurance company within a reasonable time after an accident, while an additional insured is only required to notify the insurance company within a reasonable time after learning that a policy exists and obtaining possession of the policy. *Id.* at 879. No constructive knowledge of the policy's notice requirements exists if the additional insured does not even know of the policy's existence. *Id.* at 881.

Here, J.F. Morgan had constructive knowledge of the Penn National policy and its notice requirements. *J.F. Morgan requested coverage* in the sub-contract with Anniston Concrete, which J.F. Morgan drafted. Further, J.F. Morgan had an employee who oversaw its insurance coverages. This scenario is not like *Soules* where an unsophisticated party did not know that a

homeowner's policy existed or that it would apply to an accident in a parked automobile. Instead, this case involves sophisticated businesses involved in a very typical insurance arrangement. Thus, unlike in *Soules*, J.F. Morgan constructively knew of its coverage under the Penn National policy.

Nationwide argues that the certificates of insurance provided by IPS to J.F. Morgan misled J.F. Morgan because the certificates merely listed J.F. Morgan as a certificate holder and not as an additional insured. Thus, argues Nationwide, J.F. Morgan did not know to seek out the policy after Smith's accident. The certificates do not state whether J.F. Morgan is an additional insured, however. Instead, the certificates state "IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed." One can be both a certificate holder and an additional insured. Further, no evidence exists that J.F. Morgan has ever expressed doubt about its status as an additional insured.

Thus, at the very least, J.F. Morgan had constructive knowledge of the Penn National policy's notice requirements because it requested to be covered by the Penn National policy as an additional insured.

Second, Nationwide argues that J.F. Morgan, an additional insured, is not required to comply with the Penn National policy's requirement to forward suit papers when Anniston Concrete, the named insured, has already done so. This statement is only partially accurate. *See Pearson*, 246 So. 2d at 660 (finding that insurer must cover additional insureds, even when they failed to forward suit papers, *because no requirement existed in the insurance policy for "additional insureds" to forward suit papers*). Here, however, the Penn National policy *equally* requires *either* Anniston Concrete or J.F. Morgan to send suit papers and, unfortunately, neither

16

party forwarded the suit papers for 13 months.

In fact, in *Alfa Ins. Co. v. Templeton*, the Alabama Court of Civil Appeals found that a named insured still had a duty to forward suit papers when a third party had already sent a copy of the suit papers to the insurer. *See* 919 So. 2d 300, 305 (Ala. Civ. App. 2005). The court rejected the argument that the insurer merely needs "'actual notice' of the lawsuit, regardless from whom that notice is received." *Templeton*, 919 So. 2d at 305; *but see Safeway Ins. Co. of Alabama v. Thompson*, 688 So. 2d 271, 273 (Ala. Civ. App. 1996) (finding adverse plaintiff's forwarding of suit papers, rather than named insured, is sufficient when judgment-proof named insured had no incentive to forward suit papers, insurance company has notice of the accident, and insurance company is not prejudiced). While a closer case exists here, because Anniston Concrete is the named insured and not a third party, clearly *someone* had to send the suit papers to Penn National and no one bothered to do so.

Third, Nationwide argues that Penn National waived the requirement to send suit papers because Penn National, through its agent IPS, determined that no coverage existed for McFry's lawsuit in November 2009. According to Nationwide, because IPS denied that the policy covered J.F. Morgan, Penn National cannot now raise a lack of notice defense. *See Am. Auto. Ins. Co. v. English*, 94 So. 2d 397, 402 (Ala. 1957). In *English*, the insurance company denied liability because it said it was not the primary insurer. *Id.* This denial waived the company's lack of sufficient notice and lack of cooperation defenses. *Id.* "When an insurer specifically denies liability on one ground, it thereby waives all other grounds of forfeiture." *Id.*

Nationwide relies on IPS agent Garmon's testimony about IPS's actions to show that Penn National denied coverage and, thus, waived all other defenses. Garmon stated in his

deposition:

> Q. Under what circumstances or information received from an insured *do you contact Penn National* or would you contact Penn National?
> A. Well, certainly, when a claim was filed and when we felt like there was potential for a claim.
> Q. You made the determination, November of 2009, there wasn't a potential for a claim?
> A. At that point, yes.

(Doc. 60-4, 79 (emphasis added)).

Garmon's deposition testimony does not reflect a denial of coverage. Rather, Garmon's testimony states when IPS would *contact* Penn National to report a claim, a completely separate issue from denying a claim. In fact, once Penn National received the suit papers, it did defend J.F. Morgan under a reservation of rights instead of immediately denying coverage.

Finally, even if Garmon's deposition testimony could be read as indicating a denial of coverage by Penn National, such denial is irrelevant to J.F. Morgan's obligation to forward suit papers. Even if IPS had sought to deny J.F. Morgan's claim on behalf of Penn National, the denial of coverage was never communicated to J.F. Morgan. Neither IPS, Anniston Concrete, nor Penn National communicated *anything* about Smith's accident or McFry's lawsuit *to J.F. Morgan* between the time J.F. Morgan received the suit papers in November 2009 and the time Nationwide demanded coverage in December 2010. Thus, J.F. Morgan cannot rely on a denial it knew nothing about to justify its failure to act.

In summary, none of Nationwide's excuses for J.F. Morgan's failure to forward suit papers to Penn National are persuasive. J.F. Morgan failed to follow the policy's notice requirements.

### 4.      Receipt of Penn National Policy

In its reply brief, Nationwide argues for the first time that Penn National is estopped from

denying coverage because J.F. Morgan never received a copy of the Penn National policy as required by Ala. Code § 27-14-19 (1975). Alabama law requires an "insured" to receive a copy of its insurance policy. *See* Ala. Code § 27-14-19 ("[E]very policy shall be mailed or delivered to the insured or to the person entitled thereto within a reasonable period of time after its issuance."); *Brown Mach. Works*, 659 So. 2d at 61 (finding that who must receive a copy of an insurance policy is determined by how the party fits along a hypothetical spectrum of potential recipients from the purchaser and named insureds at one end to incidental beneficiaries and beneficiaries of a group policy at the other end).

The court declines to consider Nationwide's argument because Nationwide first raised it in its reply brief. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005) (quoting *U.S. v. Coy*, 19 F.3d 629, 632 n. 7 (11th Cir. 1994)) ("As we repeatedly have admonished, '[a]rguments raised for the first time in a reply brief are not properly before a reviewing court.'"); *White v. ThyssenKrupp Steel, USA, LLC,* 743 F. Supp. 2d 1340, 1357 (S.D. Ala. 2010) ("District courts, including this one, ordinarily do not consider arguments raised for the first time on reply."). Thus, the court declines to decide whether J.F. Morgan's failure to forward suit papers to Penn National is excused under Ala. Code § 27-14-19 if J.F. Morgan did not have a copy of the Penn National policy.

In summary, the Penn National policy did not require J.F. Morgan to notify Penn National of Smith's accident or McFry's lawsuit, but did require J.F. Morgan to "immediately" forward suit papers from McFry's lawsuit. J.F. Morgan failed to forward the suit papers for 13 months.

## C.    Reasonableness of Delay

Finally, the court must determine whether J.F. Morgan acted reasonably in failing to

forward suit papers from McFry's lawsuit to Penn National for 13 months. The Penn National policy required J.F. Morgan to "immediately" send the suit papers. J.F. Morgan's 13 month delay is unreasonable as a matter of law because J.F. Morgan offers no legitimate excuse for its delay.

Under Alabama law, a requirement to "immediately" forward suit papers means "'within a reasonable time' in view of all the facts and the circumstances of the case." *Thomas*, 334 So. 2d at 882 (internal citations omitted).The court considers (1) the length of the delay and (2) the reasons for the delay to determine the reasonableness of delay. *Id*. The insurer need not show prejudice for delay to be unreasonable. *Id.*

If the insured's "excuses may reasonably be said to justify the delay," then a question of fact exists. *Id.* at 883. However, if the "insured fails to show a reasonable excuse or the existence of circumstances which would justify a protracted delay, the Court should as a matter of law hold that there has been a breach of the condition as to notice." *Id.* at 882-883 (quoting *Zurich Gen. Accident & Liab. Ins. Co. v. Harbil Rest., Inc.*, 184 N.Y.S.2d 51, 53 (App. Div. 1959)).

Sometimes, when weighing the reason for and length of delay, courts find that the delay is reasonable as a matter of law. *See Alabama Plating Co.*, 690 So. 2d at 333 (accepting without discussion that one year delay was reasonable as a matter of law); *CIE Serv. Corp. v. Smith*, 460 So. 2d 1244, 1247 (Ala. 1984) (One year delay is reasonable when insured's excuse is impossibility of predicting criminal acts of a third party); *Pinson Truck Equip. Co. v. Gulf Am. Fire & Cas. Co.*, 388 So. 2d 955, 956 (Ala. 1980) (Two week delay is reasonable as a matter of law without showing any excuse).

Sometimes courts find that a delay is neither reasonable nor unreasonable as a matter of law and submit the question to a jury. *See Steele*, 985 So. 2d at 939, 942 (two year delay where

excuse is that one party did not think insurance policy covered accident and another party did not

know about insurance policy); *Dill v. Colonial Ins. Co. of California*, 569 So. 2d 385, 386 (Ala.

1990) (22 month delay where excuse is that insured did not know he had coverage); *U.S. Fid. &*

*Guar. Co. v. Baldwin Cnty. Home Builders Ass'n, Inc.*, 770 So. 2d 72, 76 (Ala. 2000) (Two year

delay where excuse is that insured did not expect lawsuit to occur); *U.S. Fid. & Guar. Co. v.*

*Bonitz Insulation Co. of Alabama*, 424 So. 2d 569, 572-3 (Ala. 1982) (Five year delay where

excuse is that insured unsure whether a lawsuit would occur); *Soules*, 258 So. 2d at 874 (11

month delay where one party did not know about policy and another party did not know that

policy covered accident).

When no legitimate reason is offered for the delay, however, courts can find delays

unreasonable as a matter of law. *See Thomas*, 334 So. 2d at 884-5 (six month delay found

unreasonable as a matter of law when offered excuses - insured's belief that no coverage existed,

belief that insured not liable for accident, and belief that no suit would be filed - are objectively

unreasonable); *B & M Homes, Inc. v. Am. Liberty Ins. Co.*, 356 So. 2d 1195, 1196 (Ala. 1978)

(seven month delay found unreasonable as a matter of law when no excuse provided); *Pharr v.*

*Cont'l Cas. Co.*, 429 So. 2d 1018, 1019 (Ala. 1983) (8 month delay found unreasonable when no

excuse provided). Here, Nationwide provides no legitimate reason for delay.

Nationwide argues that J.F. Morgan's 13 month delay is reasonable because J.F. Morgan

did not know that the Penn National policy included it as an additional insured and, thus, did not

know to forward suit papers. Lack of knowledge may be a legitimate reason for delay. *See Dill*,

569 So.2d at 386; *Steele*, 985 So. 2d at 939, 942; *Soules*, 258 So. 2d at 874. However, as

discussed above, J.F. Morgan requested to be listed as an additional insured on the Penn National

policy. Further, the certificates of insurance requested by J.F. Morgan listed J.F. Morgan as a

certificate holder, although they did not name J.F. Morgan an additional insured.

Finally, no evidence exists that J.F. Morgan actually thought it was *not* an additional

insured. In fact, J.F. Morgan must have assumed it was covered when it told Anniston Concrete

to notify its insurer. J.F. Morgan had, at the very least, constructive knowledge that it was, in

fact, an additional insured under Anniston Concrete's policy with Penn National because it is a

sophisticated business with experience with commercial general liability insurance policies. J.F.

Morgan reasonably had constructive knowledge that every liability insurance policy requires an

insured to forward suit papers. Thus, J.F. Morgan should have known to forward suit papers

much sooner than 13 months after receipt.

Nationwide also argues that the 13 month delay is reasonable because J.F. Morgan did

not believe the Penn National policy covered J.F. Morgan and, thus, had no reason to forward

suit papers. Belief that no insurance coverage exists may be a legitimate reason for delay. *See

Soules*, 258 So. 2d at 874. However, in *Thomas*, the Alabama Supreme Court distinguished

*Soules*, noting that when a named insured has possession of a policy, an opportunity to read the

policy, and repeated instructions by other parties to notify the insurance company, delay because

the insured believed no coverage exists is unreasonable as a matter of law. *See Thomas*, 334 So.

2d at 882. The key considerations in *Thomas* are: (1) knowledge of the policy and (2) an

explanation of the policy's terms to the insured by a sophisticated party. *Id.*

Here, like in *Thomas*, J.F. Morgan had constructive knowledge of the policy. Further, J.F.

Morgan employed someone to oversee its insurance coverages. *Cf. Soules*, 258 So. 2d at 874

("The court has recognized that it is difficult for an untrained layman to understanding the

complexity of omnibus coverage in other cases."). J.F. Morgan's only rationale for its belief that

no coverage existed are statements made by *IPS to Anniston Concrete* on November 12, 2009

that the Penn National policy did not include J.F. Morgan as an additional insured. J.F. Morgan

did not know about these statements until after this case began. Like in *Thomas*, J.F. Morgan's

after-the-fact assertion that it believed that no coverage existed is unreasonable.

In summary, the court finds that J.F. Morgan's 13 month delay in forwarding suit papers

from McFry's lawsuit to Penn National is unreasonable as a matter of law because J.F. Morgan

offers no legitimate excuse for its delay.

### IV. Conclusion

J.F. Morgan failed to "immediately" send suit papers from McFry's lawsuit to Penn

National. J.F. Morgan could have sent the suit papers to either Penn National or its agent IPS.

However, J.F. Morgan failed to forward the suit papers to anyone for 13 months. J.F. Morgan

provided no legitimate excuse for its delay and, thus, the delay is unreasonable as a matter of law.

Because J.F. Morgan violated the Penn National policy's terms, Penn National is not

required to indemnify J.F. Morgan or Nationwide for the cost to settle McFry's lawsuit; instead

Nationwide is required to indemnify Penn National for the cost to settle McFry's lawsuit.

Thus, the court **GRANTS** Penn National's motion for summary judgment; **DENIES**

Nationwide's motion for summary judgment; and **DENIES AS MOOT** Penn National's motion

to amend the complaint.

**DONE** and **ORDERED** this 7th day of January, 2015.

KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE

23